UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN DOE,

                                  Plaintiff,

                                                    DECISION AND ORDER

                                                    08-CV-6199L

                              v.

DONALD SELSKY,
J. WOOD,
D. SQUIRES,
C. SCHOONOVER,
SERGEANT HARVEY,
CHRISTINE A. ANTENORE,
PETER RUSSELL,
J. THOMPSON,

                                  Defendants.
_____

        This is a *pro se* prisoner action under 42 U.S.C. § 1983. On March 7, 2013, the Court of Appeals for the Second Circuit issued a mandate in this case (Dkt. #50), vacating this Court's dismissal of the complaint, with instructions that this Court determine whether plaintiff's filing of administrative grievances tolled the statute of limitations on his claims, so as to make his complaint in this action timely.

        After the parties filed additional submissions addressing the issues on remand, this Court issued a Decision and Order on June 10, 2013, 2013 WL 2477255, directing the Clerk of the Court to reinstate plaintiff's first amended complaint (Dkt. #10), with the proviso that plaintiff's first cause of action, asserting a claim for malicious prosecution, would remain dismissed.[1] The Court also noted that because plaintiff's claims had previously been dismissed as time-barred (with the

---

        [1]In addition, plaintiff's fifth cause of action, asserted against three parole commissioners, was dismissed by the Court *sua sponte* on December 10, 2008 (Dkt. #11). That claim remains dismissed as well.

exception of the malicious prosecution claim, which was dismissed on the merits), "defendants ha[d] never had occasion to present, and this Court ha[d] never had occasion to consider, other possible defenses to those claims, including exhaustion, or the substantive merits of the claims." *Id.* at *4. The Court added that whether those reinstated claims might be subject to dismissal at a later date remained to be seen. *Id.*

Following reinstatement of the complaint, defendants moved for summary judgment dismissing all of plaintiff's remaining claims. Plaintiff has filed papers opposing the motion.

## DISCUSSION

**I. Due Process**

In his second cause of action, plaintiff alleges that defendant Thompson, who conducted plaintiff's disciplinary hearing, violated his constitutional due process rights by finding plaintiff guilty based on a false misbehavior report that was issued by defendant Wood. The third cause of action asserts a similar claim against defendant Selsky for failing to overturn Thompson's decision.

Plaintiff fails to identify any manner in which his due process rights were violated by Thompson or Selsky. The Court has also reviewed the hearing transcript, which has been submitted by defendants, and has not found any obvious basis for this claim. The claim appears to be based on little more than plaintiff's allegation that the charges against him were false; he alleges that he was "set up" by Woods, and that the charges against him were eventually "dismissed in a Court of law." Dkt. #10 at 9.

Even if the charges were false, though, that does not amount to a due process violation, as long as plaintiff was afforded a fair opportunity to refute the charges. *See Livingston v. Kelly*, 423 Fed.Appx. 37, 40 (2d Cir. 2011). There is no indication that plaintiff was denied such an opportunity, nor is there any evidence that Thompson or Selsky had anything to do with the issuance of the allegedly false charges. This claim is therefore dismissed.

**II. Deliberate Indifference**

Plaintiff's fourth cause of action alleges that defendants ANTENORE and Russell, who are identified respectively as a social worker supervisor and director of mental health, were deliberately indifferent to his serious medical needs. Plaintiff alleges that he was so distraught over the false charges against him, compounded by the knowledge that his wife was suffering from terminal cancer, that he attempted suicide by hanging himself in his cell. He further alleges that defendants "knew [that plaintiff] had previously hung up before [sic] and should have taken all care about [his] fragile state of mind." Dkt. #10 at 11. Plaintiff states that defendants took no steps to prevent him from trying to kill himself and never provided him with any psychological counseling.

As with any other claim of deliberate indifference under the Eighth Amendment, a prisoner asserting such a claim based on an attempted suicide must satisfy both the objective and subjective components of an Eighth Amendment claim. *See Pooler v. Nassau Univ. Med. Ctr.*, 848 F.Supp. 332, 344-45 (E.D.N.Y. 2012). The subjective element "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Here, plaintiff has not met that subjective element. He has not alleged facts or presented evidence showing that defendants Antenore and Russell both knew of and disregarded any substantial risk to plaintiff's health or safety. He alleges only that he "told both defendants that [he] was not guilty of all charges and that [his] wife ha[d] cancer and she [wa]s dying and [he] must be able to get in contact with her and [his] child because [he] had done nothing wrong." Dkt. #10 at 11. He has not alleged that he told them that he was having suicidal thoughts, or that they knew of any other information that he might be at risk for suicide.

Even accepting the truth of plaintiff's factual allegations–as opposed to his merely conclusory legal assertions–there is no basis for this claim. Plaintiff alleges that he "hung up" in his cell in November 2004, "but because the sheet [he] used broke under [his] weight, when [he] woke up, [he]

again attempted to hang up, but an officer who knew [him] ran into the cell and cut the sheet down which stopped [plaintiff] from killing [him]self within the second attempt." Dkt. #10 at 11.

It does not appear, then, that the defendants named in this count were aware of plaintiff's first suicide attempt. According to plaintiff's allegations, his makeshift rope broke, and as soon as he came to, plaintiff again attempted to hang himself. The only information that he alleges defendants were aware of was his claim that he was innocent of the charge against him, and that his wife was dying of cancer. As unfortunate as plaintiff's circumstances might have been, they do not demonstrate any basis for a conclusion that defendants were, or even should have been, aware that plaintiff might attempt suicide. Defendants are therefore entitled to summary judgment on this claim. *See Phelan v. Quinn*, No. 11-CV-314, 2012 WL 5269262, at *4 (N.D.N.Y. Sept. 20, 2012) (inmate plaintiff failed to plead sufficient facts for subjective prong of deliberate indifference, where he did not allege that defendants were aware of any previous suicide attempts or thoughts, or any other underlying mental health diagnoses suggestive of suicidal tendencies), *Report and Recommendation adopted*, 2012 WL 5269673 (N.D.N.Y. Oct. 23, 2012).

**III. Mail Tampering**

Plaintiff's sixth cause of action alleges that defendants Wood, Squires, Schoonover and Harvey "did work or sent word to the S.H.U. [Special Housing Unit] officers to deny [plaintiff] all opportunities to exhaust all [his] remedies ...," with the aim of preventing plaintiff from successfully suing them in federal court. Plaintiff alleges that "[b]ecause of this massive mail tampering," he was unable to exhaust his administrative remedies, and that "the torch was passed to all staff to hinder [plaintiff] at all costs .. ." Dkt. #10 at 14.

Plaintiff does not allege, then, that his mail was tampered with generally, nor does he allege that he attempted to send out any non-legal mail during the time in question. The thrust of his claim is that defendants targeted his mail or grievances for the purpose of thwarting his attempts to exhaust his grievances.

Such a claim, however, requires a showing that defendants' actions "resulted in actual injury" to the plaintiff. *Quinn v. Stewart*, No. 10 Civ. 8692, 2012 WL 1080145, at *6 (S.D.N.Y. Apr. 2, 2012). *See*, *e.g.*, *Myers v. Dolac*, No. 09-CV-6642, 2013 WL 5175588, at *14 (W.D.N.Y. Sept. 12, 2013) (dismissing claim where prisoner failed to show actual harm resulting from defendants' alleged tampering with his legal mail, and stating that his "conclusory allegations of harm [we]re insufficient to establish a constitutional violation").

Here, any difficulties plaintiff experienced in attempting to exhaust his claims have not caused him any actual prejudice; in fact, this Court has held that plaintiff has alleged enough facts to show that he made reasonable efforts to exhaust his administrative remedies, *see* 2013 WL 2477255, at *4, and defendants do not appear now to assert non-exhaustion as a basis for dismissal. This claim must therefore be dismissed.

**IV. Retaliation**

In his ninth cause of action, plaintiff alleges that defendants Wood, Squires, Schoonover, and Harvey retaliated against him, in violation of plaintiff's rights under the First Amendment. In order to prevail on this claim, plaintiff must allege, and ultimately prove, that "(1) he engaged in constitutionally protected speech or conduct, (2) defendants took adverse action against him, and (3) there was a causal connection between the protected activity and the adverse action." *Taylor v. Fischer*, 841 F.Supp.2d 734, 737 (W.D.N.Y. 2012) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A* ., 534 U.S. 506 (2002)). "Conclusory allegations of retaliation are not sufficient; the plaintiff must allege facts from which retaliation may plausibly be inferred." *Muhammad v. Reeves*, No. 08-CV-182, 2012 WL 5617113, at *8 (W.D.N.Y. Nov. 15, 2012).

Plaintiff's retaliation claim falters principally because he cannot establish that he engaged in protected activity. He alleges that all this trouble began when defendant Wood "stopped [plaintiff] when [he] was going into the messhall because someone in the line said something nasty to [Wood],

so he picked [plaintiff] out of the line and ... told [plaintiff] ' I am going to get you Doe." Dkt. #10 at 6-7.

Not only is saying "something nasty" not protected speech, *see Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (inmate's insulting comments to disciplinary hearing officer not protected speech); *Chevalier v. Schmidt*, No. 11-CV-788, 2012 WL 6690313, at *3 (W.D.N.Y. Dec. 21, 2012 ("Vulgar, insulting, and threatening statements have been found not to be protected speech for purposes of the First Amendment") (citing cases), but plaintiff does not even allege that he uttered the speech in question. He alleges that Wood mistakenly believed that plaintiff had made the "nasty" comment to Wood, and that Wood therefore decided to "get" plaintiff.

Plaintiff's protestations of his innocence cannot form the basis for a retaliation claim, because it is evident from his own allegations that what prompted defendants to take action against him was not his denial of having directed a "nasty" comment at Wood, but Wood's belief that plaintiff had made such a comment. There is no reason to think, from his allegations, that plaintiff would have fared any better at the hand of defendants had he falsely confessed to making the comment. In short, it was the initial "nasty" comment–not plaintiff's denial of making it–that allegedly led to the false charges against plaintiff.

Were the Court to rule otherwise, virtually any prisoner could evade the rule that false misbehavior reports are not in themselves actionable, *see Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997), simply by alleging that he was retaliated against for denying the charges contained in the report. While an assertion of one's innocence might constitute protected speech under some circumstances, the underlying accusation cannot logically have provoked the plaintiff's speech claiming his innocence *and* constituted an adverse action taken in retaliation for that speech.

**V. Conspiracy**

In his tenth cause of action, plaintiff asserts a claim of conspiracy against all the defendants under 42 U.S.C. § 1985(3). In order to establish such a claim, a plaintiff must plead and prove: (1)

a conspiracy (2) for the purpose of depriving plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby the plaintiff was injured in his person or property or deprived of a right or privilege of a citizen. *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)). In addition, the conspiracy must be motivated by some class-based animus. *Ricci v. DeStefano*, 530 F.3d 88, 121 (2d Cir. 2008).

Plaintiff's conspiracy allegations do not meet that standard. Plaintiff has alleged that defendants violated his constitutional rights, and has then simply tacked on a conclusory allegation that those violations were committed pursuant to a conspiracy. Conspiracy allegations couched in such "generic and conclusory terms" are insufficient to make out a § 1985 claim. *Hawkins v. County of Oneida*, 497 F.Supp.2d 362, 379 (N.D.N.Y. 2007). *See Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("conclusory or general allegations are insufficient" to state a claim for conspiracy to violate the plaintiff's civil rights), *cert. denied*, 547 U.S. 1101 (2006); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss") (quoting *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993)). In addition, plaintiff has failed to allege any race- or class-based animus as required to support a § 1985 conspiracy claim. *See Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006); *Zembiec v. County of Monroe*, 766 F.Supp.2d 484, 498 (W.D.N.Y. 2011), *aff'd*, 468 Fed.Appx. 39 (2d Cir. 2012).

## VI. "Catch All" Claims

Several of plaintiff's causes of action–specifically, the seventh, eighth, and eleventh–can best be characterized as "catch all" claims. They do little more than repeat plaintiff's allegations that he was "set up" with a false weapons charge, that defendants ignored his "fragile mind state," and that he has suffered extreme hardship and pain and suffering as a result.

Absent some viable independent basis for these claims, however, they cannot stand. Plaintiff's allegation in his seventh cause of action of a "physical assault" is not supported by any factual allegations, and appears to be based solely on his attempted suicide, which has been addressed above. The eighth cause of action simply describes plaintiff's "massive mental and emotional pain and suffering," Dkt. #10 at 16, and sets forth no cognizable constitutional claim. Similarly, the eleventh cause of action alleges an "Atypical and Significant Hardship in violation of [plaintiff's] Constitutional Rights," but no particular theory of liability. Dkt. #10 at 21. To the extent that this reference could be interpreted as an allusion to one of the elements of a due process claim, *see Sandin v. Connor*, 515 U.S. 472, 484 (1995), plaintiff has not presented any evidence of a due process violation, as explained above with respect to his second and third causes of action.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #57) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
   September 20, 2013.